UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-10034-LEIBOWITZ(s)

UNITED STATES OF AMERICA

v.

LUIS ARNULFO OCAMPO MARTINEZ,

    Defendant.

_____/

**UNITED STATES' REPLY TO DEFENDANT'S RESPONSE
TO MOTIONS IN LIMINE AND NOTICE OF INTENT TO
INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

    The United States of America, by and through the undersigned Assistant United States Attorneys, respectfully submits this Reply to Defendant Luis Arnulfo Ocampo Martinez's Response to the Government's Motions *in Limine (*the "Response"), Dkt. No. 40, and contemporaneous Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b). This consolidated filing addresses both the Defendant's objections to the Government's motions and provides proper notice of the Government's intent to offer evidence of other acts at trial.

    **I.**    **Introduction**

    Defendant Luis Arnulfo Ocampo Martinez is charged with making false statements to USCIS (Count 1) and assaulting a federal officer (Count 2). These charges arise from a continuous, twenty-seven-year effort to conceal his 1998 deportation—a deception that began with an alias, was sustained by decades of fraudulent filings, and culminated in physical violence when federal agents finally intervened in July 2025.

    In his Response, the Defendant challenges routine immigration records and seeks to

introduce irrelevant character attacks against the victim. These arguments fail under settled Eleventh Circuit precedent. First, the A-Files are admissible non-testimonial public records under *United States v. Caraballo*. Second, Officer Natalie Diaz offers admissible lay opinion based on particularized professional knowledge, not expert testimony. *United States v. Hill*. Third, "reverse 404(b)" evidence regarding the victim's unrelated conduct is inadmissible as it is irrelevant to the Defendant's state of mind and would create a prejudicial "trial within a trial" under Rule 403. Finally, the Government provides notice that the Defendant's prior fraudulent TPS applications are admissible as intrinsic evidence of his intent, knowledge, and motive

## II.     Admissibility of Immigration Records

The Government's case on Count 1 rests on documentary evidence: the Defendant's Alien File ("A-File"). To prove that the Defendant lied when he denied ever being in removal proceedings, the Government must introduce the records of the existence of those proceedings. The Defendant objects, citing the Confrontation Clause and hearsay rules. These objections are foreclosed by settled Eleventh Circuit law.

### A.     The Documents Are Admissible Public Records Under Rule 803(8)

The documents at issue—including the Form I-213 (Record of Deportable/Inadmissible Alien), Form I-205 (Warrant of Removal)—are public records. FRE 803(8) provides an exception to the hearsay rule for records of a public office that set out "(i) the office's activities; (ii) a matter observed while under a legal duty to report...; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation."

While Rule 803(8)(A)(ii) of the Federal Rules of Evidence excludes "matter[s] observed by law-enforcement personnel" in criminal cases, the Eleventh Circuit has narrowly construed this exclusion. It is designed to prevent the admission of subjective, adversarial observations made by

officers at a crime scene (*e.g.*, a homicide detective's notes). It does not bar the admission of routine, ministerial records generated by administrative agencies in the course of their non-adversarial duties.

In *Agustino-Hernandez*, 14 F.3d 42, the Eleventh Circuit explicitly held that the admission of "routinely and mechanically kept I.N.S. records," such as the I-194 form and warrants of deportation, does not violate Rule 803(8)(B). *Agustino-Hernandez*, 14 F.3d at 43. The court reasoned that when records are prepared "long before the alleged offense" and are relied upon in daily agency operations, the custodian has "no incentive to do anything other than mechanically record the relevant information." *Id.* (quoting *United States v. Brown*, 9 F.3d 907, 912 (11th Cir. 1993)). The records the Government seeks to admit—the 1998 detention and removal documents—were created about twenty-seven years ago. They were not created for the purpose of this 2025 criminal case. They were created to track the Defendant's immigration status in 1998. Under *Agustino-Hernandez*, they are admissible.

      B.      <u>The Documents Are Non-Testimonial Under the Confrontation Clause</u>

The Defendant relies on *Caraballo* to argue that the A-Files violate his Sixth Amendment right to confrontation. *Caraballo*, 595 F.3d at 1214. This argument misapprehends the holding of *Caraballo*.

In *Caraballo*, the Eleventh Circuit held that standard immigration forms like the I-213 are non-testimonial because they are "recorded routinely and not in preparation for a criminal trial. The *Caraballo* court explained that an I-213 form records objective facts: "where, when, and how a deportee left the country" or entered it. It is analogous to a business record, which the Supreme Court has noted is "by its nature" non-testimonial. The fact that the document might eventually be used in a prosecution is an "incidental or secondary use" that does not transform it into testimonial

3

hearsay. *United States v. Noria*, 945 F.3d 847 (5th Cir. 2019).

The Defendant correctly notes that *Caraballo* affirmed the admission of redacted I-213 forms. The Government agrees with this approach and does not seek to admit any subjective narrative portions of the 1998 I-213 that might describe tactical law enforcement observations (e.g., "subject attempted to flee through the brush"). We seek to admit information that is routinely kept to maintain accurate records of the movement of aliens name, alias, DOB, citizenship), the procedural history (date of processing, warnings given), and the biometrics (fingerprints, photos).

As the Fifth Circuit explained in *Noria* (citing *Caraballo*), the primary purpose of an I-213 is "administrative, not investigative or prosecutorial." *Noria*, 945 F.3d at 857. It serves to track the entry and movement of aliens. By redacting the narrative, the Government removes any potential testimonial concerns, leaving only the "routine, objective cataloging of unambiguous biographical matters" that *Caraballo* explicitly permits.

Therefore, the Defendant's A-File should be admissible to prove: 1) identity (the Defendant is the "Luis Arnulfo Sanchez Pena" processed in 1998); 2) alienage (the Defendant was not a citizen of the United States; 3) prior removal processing and order (the Defendant detained and notified of removal proceedings, making his 2023 statements false); and 4) notice (the Defendant received warnings, demonstrating that he knew to appear).

### III.   Admissibility Officer Diaz's Lay Opinion Testimony

The Defendant argues to exclude the testimony of USCIS Supervisory Immigration Officer Natalie Diaz, labeling her an "unnoticed expert." This objection confuses the distinction between Federal Rule of Evidence 701 (Lay Opinion) and Rule 702 (Expert Opinion). Officer Diaz's testimony is classic Rule 701 evidence based on "particularized knowledge" gained through her employment.

4

Federal Rule of Evidence 701 allows a lay witness to offer opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

The Advisory Committee Notes to the 2000 Amendments of Rule 701 clarify that "the distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Fed. R. Evid. 701 advisory committee's note to 2000 amendment. Importantly, the Notes explicitly state that a witness may testify to "particularized knowledge that the witness has by virtue of his or her position in the business" without qualifying as an expert. *Id.*

The Eleventh Circuit has upheld this principle. In *Hill*, the court permitted loan officers to testify about whether they would have approved a loan had they known the true facts of the application. *Hill*, 643 F.3d at 807. The court held this was not expert testimony because it was based on the witnesses' "personal experiences" and knowledge of the bank's policies, not on scientific or technical principles. *Id.* at 842.

Officer Diaz is being called to testify to the facts of USCIS procedure, as she perceives them in her daily duties. Specifically, system workflow and how the Electronic Immigration System ("ELIS") processes applications and how A-Files are maintained. She will also testify to form requirements and what specific questions on the Form I-485 mean in the context of agency processing (e.g., that a "Yes" to prior removal triggers a request for an I-212 waiver). Finally, the anticipated testimony is about materiality and that the Defendant's false statement was "material" because it prevented the agency's systems from linking his current application (A-File -326) with

5

his disqualifying history (A-File -370).

This testimony is based on her "particularized knowledge" as a supervisor who oversees these very processes. It is no different than the loan officer in *Hill* testifying that a lie about income was material to the loan decision. It does not require a Ph.D. or outside scientific methodology. Rather, it requires familiarity with the "day-to-day affairs" of USCIS.

Furthermore, proving materiality in a § 1001 case is the Government's burden. Materiality is defined as having "a natural tendency to influence, or [being] capable of influencing, the decision of the decision-making body." Officer Diaz is the representative of that decision-making body. Her testimony is the direct evidence of how the decision would have been influenced. Excluding her testimony would prevent the Government from proving an essential element of the crime using the most competent witness available.

### IV.     Exclusion Of Extrinsic "Bad Acts" Evidence

The Defendant seeks to introduce highly prejudicial and irrelevant evidence regarding Agent B.C., specifically: (1) a YouTube video from "Canela News" depicting a traffic stop; (2) a Facebook post regarding a bystander detention; and (3) an article from "Oxford American." The defense argues this is relevant to self-defense. This argument fails under Federal Rules of Evidence 404(b), 405, and 403.

#### A.    Irrelevance to Self-Defense Claims

Under Rule 404(a)(2)(B), a defendant may offer evidence of an alleged victim's pertinent trait. However, Rule 405 strictly controls how this trait may be proved. Rule 405(a) generally limits such proof to reputation or opinion testimony. Evidence of specific instances of conduct—like the incidents in the videos and articles—is admissible only in two narrow circumstances under Rule 405(b), neither of which applies here.

1. *Character is Not an Essential Element*

Rule 405(b) allows specific instances of conduct only when the victim's character is an "essential element of the charge, claim, or defense." The Eleventh Circuit has expressly held that a victim's violent character is not an essential element of a self-defense claim in an assault case. United States v. Williams, 163 F.3d 1222 (11th Cir. 1998). Because the victim's character is not an essential element of the defense, the Defendant is prohibited from introducing specific instances of Agent B.C.'s past conduct to prove he acted aggressively on July 1, 2025.

2. *Irrelevance to State of Mind*

While specific acts may sometimes be admissible to prove the defendant's reasonable apprehension of danger (state of mind), this exception applies only if the defendant had actual knowledge of the specific bad acts at the time of the confrontation. The Defendant has proffered no evidence that he had ever seen the "Canela News" video, the Facebook post, or the "Oxford American" article prior to the assault. Without prior knowledge, these incidents could not have informed his state of mind or contributed to his fear.

Consequently, the only remaining purpose for this evidence is to suggest that because Agent B.C. allegedly acted aggressively in the past, he must have been the "first aggressor" in this case. This is a classic propensity argument explicitly prohibited under Rule 404(b)(1).

B.  Exclusion Under Rule 403

Even if the Court found marginal relevance, Rule 403 mandates exclusion. The rule permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Admitting evidence of three unrelated, fact-specific encounters involving B.C. would

7

create a "trial within a trial." The jury would be forced to litigate the propriety of the Agent's conduct in the "Canela News" stop, the bystander detention, and the magazine story before they could even address the facts of this case.

The "Canela News" video and "Oxford American" article contain unadjudicated allegations. Asking the jury to determine their validity would be a massive diversion of time and attention, prejudicing the Government by putting the victim on trial for conduct unrelated to the indictment.

V. **Notice of Intent to Use Evidence Under Rule 404(B) or as Inextricably Intertwined**

Pursuant to the Court's Scheduling Order and Federal Rule of Evidence 404(b), the United States hereby provides notice of its intent to introduce evidence spanning from 1998 to 2025. This evidence is inextricably intertwined with the charged offenses or, alternatively, admissible under Rule 404(b).

A. <u>Intrinsic Evidence</u>

Evidence of criminal activity other than the charged offense is not "extrinsic" under Rule 404(b) if it is: (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably linked with the evidence regarding the charged offense. *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008).

B. <u>The 1999-2022 TPS Applications</u>

The Government intends to introduce approximately 14 TPS renewal applications filed by the Defendant between 1999 and 2022. This evidence is intrinsic because it completes the story of the crime, explaining how the Defendant remained in the United States for 25 years and maintained the "clean" Alien registration number (-326) that enabled the 2023 fraud charged in Count 1.

8

Alternatively, this evidence is admissible under Rule 404(b) to prove Absence of Mistake and Intent/Plan. The Defendant's 2023 fraudulent Green Card application was not a solitary clerical error; it was the culmination of a twenty-seven-year scheme. The fact that the Defendant filed TPS renewal applications roughly every 18 months for over two decades—checking "No" to questions about prior removal or aliases on every single one—is the strongest possible proof of willfulness. It demonstrates a disciplined, consistent *modus operandi* of hiding the truth. Under *United States v. Ellisor*, 522 F.3d 1255 (11th Cir. 2008), prior fraudulent dealings are admissible to prove intent in a fraud case. Here, the prior filings are virtually identical to the charged filing, maximizing their probative value.

C. The May 2025 TPS Application

The Government intends to introduce the Defendant's May 2025 TPS renewal application. This evidence is intrinsic to Count 2 (Assault/Impeding) as it provides the direct factual context for the encounter. In this application, filed just six weeks before his arrest, the Defendant admitted: "On May 15, 2024... for the first time I was notified that there was a deportation order issued against me."

Alternatively, this evidence is admissible under Rule 404(b) to prove Motive and Consciousness of Guilt. The Defendant will likely argue that the altercation on July 1, 2025, was a misunderstanding or a reaction to aggressive policing. The 2025 application rebuts this by proving that the Defendant knew the government was pursuing his deportation. This specific knowledge provides the motive for his desperate attempt to flee into the mangroves and his resistance against Agent B.C.. Under Rule 404(b), evidence of motive is explicitly admissible. Furthermore, the application contains the Defendant's first admission of the "Sanchez Pena" alias, which is relevant to prove Identity.

**CONCLUSION**

The Government's motions seek to focus the trial on the charged conduct and avoid the distraction of side trials. Accordingly, the United States respectfully requests that the Court: **GRANT** the admission of the A-File documents and Officer Diaz's lay opinion; **GRANT** the exclusion of Agent B.C.'s unrelated conduct; and **ADMIT** the Rule 404(b) and intrinsic evidence detailed in this Notice.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: January 24, 2026        By:   **Adam M. Love**
ADAM M. LOVE
Assistant United States Attorney
Court ID No. A5503182
99 NE 4th Street
Miami, Florida 33132
Telephone: (305) 961-9023
Email: Adam.love@usdoj.gov

**Andrea Montes**
ANDREA MONTES
Assistant United States Attorney
Florida Bar No.1016182
99 Northeast 4th Street
Miami, Florida 33132
Telephone: (305) 961-9417
Email: Andrea.Montes@usdoj.gov